OLIVA PLUCKNETT V. WILLIAM TIPPEY ET AL.

FILED JUNE 18, 1895.   No. 6389.

*Intoxicating Liquors*: SALOON-KEEPER'S BOND: CONSTRUC-
TION: LIABILITY OF SURETIES: EVIDENCE.   Statements in the
conditions of the bonds of retail liquor dealers, which were as
follows: "Now, if the above bounden shall not, during the con-
tinuance of said license, keep a disorderly house,  *  *  *  and
shall pay all damages, fines, and forfeitures that may be ad-
judged against said  *  *  *, under the provisions of chapter
61 of the General Statutes of the state of Nebraska passed at
the sixteenth legislative assembly, and approved February 28,
1887, then, in such case, the above obligation to be void, other-
wise in full force and effect,"—*held*, to refer to chapter 61 of the
Laws of Nebraska, 1881, as arranged and published by the sec-
retary of state as authorized by law, and as the chapter desig-
nated contained the liquor law, the statements in the bonds suffi-
ciently referring to the liquor law and its provisions, the bonds
were valid, and it was error to exclude them from the evidence
in a case on the ground that the liquor license act, or law, was
not described or referred to in the conditions of the bonds.

ERROR from the district court of Saline county.   Tried
below before HALL, J.

*F. I. Foss* and *Alfred Hazlett*, for plaintiff in error.

*Griggs, Rinaker & Bibb, contra.*

HARRISON, J.

The plaintiff, for herself and her minor child, commenced
this action in the district court of Saline county against the
defendants William Tippey and George W. Schram as re-
tail liquor dealers in the village of De Witt, in said county,
and the other defendants as sureties upon bonds given when
licenses were granted to the dealers to engage in the liquor
business, to recover damages for the death of the husband
and father, alleged to have resulted from drinking intoxi-

cating liquors obtained in the saloons of the principal de-
fendants.  The answers filed were general denials.  After
issues joined, a trial was had before the court and a jury,
which resulted in a verdict and judgment in favor of the
plaintiffs against the two saloon-keepers and a judg-
ment of dismissal of the action as respects the defendants,
the bondsmen.  It appears that during the trial the plaintiff
offered the bonds in evidence and that they were objected
to on behalf of the sureties "as incompetent, immaterial,
and irrelevant and not admissible under the pleadings,
not binding upon the sureties, not being a statutory bond,
not being the bond declared upon in the petition in this
case, and not such a bond upon which an action of this
kind can be predicated and founded."  This objection
was sustained and the bonds excluded from the evidence.
This action of the trial court, it is alleged by counsel for
plaintiff, was erroneous, and it is the only reason assigned
and urged as sufficient to secure a reversal of the judgment
of the lower court.  The bonds in question were executed
to the state, each in the sum of $5,000, and each contained
a recital of the granting of a license to sell liquors, and
stated where the business was to be conducted and the
length of time it was to continue under the present license
and bond, and also contained the following conditions:
"Now, if the above bounden  *  *  *  shall not, during
the continuance of said license, keep a disorderly house,
*  *  *  *  *  *  and shall pay all damages, fines, and
forfeitures that may be adjudged against said  *  *  *,
under the provisions of chapter 61 of the General Statutes
of the state of Nebraska passed at the sixteenth legislative
assembly, and approved February 28, 1887, then, in such
case, the above obligation to be void, otherwise in full force
and effect."  The bonds did not differ except in the names
of the principal and sureties and some other unessential
particulars.

Section 6 of chapter 50 of the Compiled Statutes, gen-

erally known and referred to as the "Slocumb Law,"
provides that the bond of a retail liquor dealer shall stipu-
late "that he will not violate any of the provisions of
this act; and that he will pay all damages, fines, and penal-
ties and forfeitures which may be adjudged against him un-
der the provisions of this act." It is stated by counsel that
the trial court sustained the objection to the introduction
of the bonds in evidence on the ground that the statement
in the condition of each of them, "shall pay all damages,
fines, and forfeitures that may be adjudged against said
* * *, under the provisions of chapter 61 of the General
Statutes of the state of Nebraska passed at the sixteenth
legislative assembly, and approved February 28, 1887,"
did not refer to, or was not a designation of, the provisions
of the act in regard to the sale of intoxicating liquors, and
hence the bonds were nugatory. To determine whether
the description in the condition of the bonds in question
was sufficient and referred to the so-called "Slocumb Law"
it will be necessary to examine a portion of the record his-
tory of its enactment and publication, etc. It seems proper
here to first direct attention to the manner in which such
of the record of the enactment of laws and their publica-
tion, as will be noticed in our opinion, are authorized to be
and are made. In section 24 of article 3 of the constitu-
tion is the following statement: "All laws shall be pub-
lished in book form within sixty days after the adjourn-
ment of each session, and distributed among the several
counties in such manner as the legislature may provide;"
and among the duties of the secretary of state is "to print
and supervise the distribution of the laws and journals,
and keep an account thereof;" also, "in the publication of
the laws of this state * * * the secretary of state
shall cause to be published in each volume a general cer-
tificate to the effect that the same as contained in such vol-
ume are true copies of the laws and resolutions of the
legislature, as the case may be, on file in his office" (Com-

piled Statutes, 1893, ch. 83, art. 2, sec. 4); and in section 14
of chapter 68, Compiled Statutes, 1893, under the head of
" Printing," we find the following: "It shall be the duty
of the secretary of state to classify and arrange for publi-
cation the laws, joint resolutions, and memorials passed at
each session, and to make out a full index and marginal
notes to the laws as fast as shall be necessary.   The signa-
tures of the speaker of the house, president of the senate,
and governor shall not be printed at the end of each law
and chapter, but only at the end of the volume.   The
date of approval by the governor shall be affixed to each
law."   The foregoing, and other provisions of our laws
not particularly alluded to, fully authorize the preparation
in book form, arranged in appropriate chapters and properly
indexed, and the publication and distribution of all laws
passed at any session of the legislature.   In a volume of
the Laws of Nebraska, 1881, page 270, being the laws
passed by the legislative assembly of this state at its six-
teenth session, and duly certified by the secretary of state,
under page heading " General Laws," is "Chapter 61,"
which contains our present "liquor law" and the one under
the provisions of which licenses to sell intoxicants were
obtained by the two principal defendants in this action and
the bonds in question were executed, and it further appears
that it was approved February 28, 1881.   It seems quite
clear that the statement in the bonds, "under the provisions
of chapter 61 of the General Statutes of the state of Ne-
braska passed at the sixteenth legislative assembly, and ap-
proved February 28, 1887," pointed directly to the chap-
ter 61 of the general laws passed by the legislature at its
sixteenth session, in the volume of such laws, published
and authenticated by the duly authorized officer of the
state, and this being the liquor law, the description was
sufficient.   The fact that in the bonds the year in the date
of approval was given as 1887 when it should have been,
to be correct, 1881, we do not deem of particular moment,

Plucknett v. Tippey.

as we do not consider it such an essential or governing portion of the reference to the law under which the damages, if any, accruing to any persons by virtue of the bonds were to be adjudged, that its lack of correctness renders the bonds invalid. The law was fully and correctly indicated without it, and it may be rejected as surplusage without materially changing the completeness of the allusion in the conditions of the bonds to the law, the provisions of which were to be covered. Nor does it, we think, when read in connection with the other portions of the statement, tend to mislead the reader in respect to the particular law to which it is its purpose to direct attention. Returning to a consideration of some other statements of the conditions of the bonds, it is true that when we speak of the " Revised Statutes" we usually mean the volume published in 1866, and the volume published in 1873 we call the " General Statutes," and the later publications are known either as the "Compiled Statutes," or the "Consolidated Statutes," and the volumes published under the direction and as arranged by the secretary of state are ordinarily called "Session Laws," yet the reference to laws or statutes in the bonds was not to " General Statutes" in the sense of the volume published in 1873, or the " Compiled Statutes," but unmistakably to the "General Statutes" (which we may read general laws, as the word "statutes" means laws and is here plainly used in such sense) passed at the sixteenth legislative assembly, this portion of the statement limiting that in regard to general laws to the ones enacted at the particular session of the legislative body stated, and chapter 61 proving to be a chapter of an authorized arrangement and publication of the general laws passed at the designated session of the legislature and to be the Slocumb law, or liquor law, the conclusion, it seems to us, must be that the description of the law in the conditions of the bonds, the provisions of which were to be covered by the bonds, was clear and complete and the bonds were valid,

and the action of the trial court, by which they were ex-
cluded from the evidence for the reason stated, was erro-
neous and the judgment of dismissal of the case as to the
bondsmen, which followed, must be

REVERSED.